JOURNAL ENTRY AND OPINION
{¶ 1} Plaintiffs-appellants James and Denise Tourlakis[1] appeal from the decisions of the Cuyahoga County Common Pleas Court that entered judgment in favor of defendants-appellees Beverage Distributors, Inc., Richard Glencer and Pinkerton Investigative Services.[2] In particular, plaintiffs assert that the trial court erred in granting Pinkerton's motion to dismiss; in denying their motion for Grand Jury testimony; and in granting summary judgment in favor of Beverage Distributors and Glencer. For the reasons that follow, we affirm in part; reverse in part and remand.
 {¶ 2} The record presented to us on appeal includes undisputed facts as follows. Beverage Distributors operates a beer product distribution business. At times relevant, Beverage Distributors employed Glencer as the Director of Operations. Plaintiffs' complaint alleges that "at all times herein * * * Glencer, was * * * acting in the scope of his authority for defendant Beverage." (R. 1, ¶ 3).
 {¶ 3} In 1996, an employee driver (the "informant employee") approached Glencer reporting a theft scheme operating at the company facility that he had been solicited to join. Glencer, in turn, contacted the company president and the Cleveland Police Department ("CPD"). The informant employee agreed to participate in the theft scheme in order to learn and provide information to the company.
 {¶ 4} At the suggestion of the CPD, Beverage Distributors employed the private investigative services of Pinkerton. Pinkerton provided an undercover agent to act as a Beverage Distributor employee in an effort to infiltrate and further investigate the alleged theft scheme. The investigation revealed a theft ring operating through three departments to steal beer from the company trucks undetected. The theft operation required a participant from the following departments: a driver, a checker, and a truck tagger. During the relevant time frame, Beverage Distributors employed Mr. Tourlakis as a truck tagger.
 {¶ 5} Along with details of the scheme, the informant employee identified several participants in the theft, including "an inside warehouseman by the name of `Jimmy T," who he further identified as Mr. Tourlakis.
 {¶ 6} The Pinkerton agent successfully infiltrated the theft ring as a checker. He reported information to his supervisor, who, in turn, reported the same to Glencer and the CPD. As part of his statement to the CPD, the Pinkerton agent also identified Mr. Tourlakis as one of the participants in the theft ring. After reviewing the information, the CPD independently determined to turn it over to the prosecutor. Based upon the evidence presented, the prosecutor independently determined to issue arrest warrants for three individuals including Mr. Tourlakis. Thereafter, a fourth employee made a voluntary formal statement to the CPD admitting his participation in the theft ring and also corroborating Mr. Tourlakis' alleged involvement in it.
 {¶ 7} The prosecutor presented the information to the Grand Jury. The Grand Jury indicted Mr. Tourlakis, along with several other individuals, for theft.
 {¶ 8} The record further contains affidavit testimony that the county prosecutor alone made the decision to present the matter to the Grand Jury. Further, the prosecutor maintained "unfettered discretion" of the prosecution of Mr. Tourlakis for theft and was not controlled by defendants. After the criminal trial against Mr. Tourlakis commenced, the court granted his motion for acquittal on June 24, 1997.
 {¶ 9} Plaintiffs initially filed claims against the defendants on June 12, 1998. Plaintiffs, however, terminated that litigation with voluntary dismissals. Plaintiffs then filed this action on November 14, 2000. While it appears that plaintiffs advance the same claims in both lawsuits, the record in this appeal contains only select filings from the first action.[3]
 {¶ 10} On June 25, 2001, plaintiffs filed a motion for Grand Jury testimony.[4] On June 26, 2001, defendants Beverage Distributors and Glencer moved for summary judgment, which plaintiffs opposed. The trial court denied plaintiffs' motion for Grand Jury testimony on August 13, 2001. On September 12, 2001, the court granted defendants' motion for summary judgment and ordered plaintiffs to obtain service on Pinkerton by September 14, 2001. Thereafter, the court allowed plaintiffs until October 12, 2001 to obtain service on Pinkerton. Plaintiffs served Pinkerton on October 11, 2001. On November 11, 2001, Pinkerton filed its motion to dismiss which plaintiffs opposed. The court granted that motion on April 2, 2002. Plaintiffs appeal assigning three errors for our review that we will address out of order.
 {¶ 11} "III. The trial court erred in granting summary judgment in favor of defendants-appellees, Beverage Distributers, Inc. and Richard Glencer, because there existed genuine issues of material fact as to `malice' and `probable cause.' Further, the trial court erred in dismissing the defamation claim and in granting summary judgment on the wife's claim for loss of services and consortium."
 {¶ 12} We employ a de novo review in determining whether summary judgment was warranted. Grafton v. Ohio Edison Co., 77 Ohio St.3d 102,105, 1996-Ohio-336; Zemcik v. La Pine Truck Sales Equipment
(1998), 124 Ohio App.3d 581, 585.
 {¶ 13} Summary judgment is appropriate where: "(1) there is no genuine issue of material fact, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds can come to but one conclusion and that conclusion is adverse to the nonmoving party, said party being entitled to have the evidence construed most strongly in his favor. Horton v. Harwick Chem. Corp. (1995), 73 Ohio St.3d 679,653 N.E.2d 1196, paragraph three of the syllabus. The party moving for summary judgment bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292-293, 662 N.E.2d 264, 273-274." Zivich v. Mentor Soccer Club, 82 Ohio St.3d 367, 369-70,1998-Ohio-389.
 {¶ 14} Once the moving party satisfies its burden, the nonmoving party "may not rest upon the mere allegations or denials of the party's pleadings, but the party's response, by affidavit or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Civ.R. 56(E); Mootispaw v. Eckstein,76 Ohio St.3d 383, 385, 1996
 {¶ 15} We construe the facts in accordance with the above standard. Beverage Distributors and Glencer contend that no genuine issue of material fact exists to preclude the summary disposition of plaintiffs' claims for malicious prosecution, defamation, and loss of consortium.
 {¶ 16} Initially, we address the claims asserted against Glencer individually. Glencer maintains, and the trial court agreed, that plaintiffs' failure to present evidence that he acted outside the scope of his employment is fatal to its claims against him individually. (R. 22, Vol. 2642, P. 133). We agree. Plaintiffs allege that Glencer "at all times" acted in his official capacity and within his authority as an employee of Beverage Distributors. Ibid. There is no evidence in the record to suggest the contrary. It is well settled that an employee is not personally liable for acts committed within the scope of employment. E.g., Stuart v. National Indemnity Co. (1982), 7 Ohio App.3d 63,454 N.E.2d 158. Accordingly, the trial court properly awarded summary judgment in favor of Glencer on plaintiffs' claims.
 {¶ 17} We next address the propriety of the award of summary judgment in favor of Beverage Distributors on plaintiffs' claims. In their brief, plaintiffs do not address the portion of the trial court's judgment that disposed of plaintiffs' defamation claim against Beverage Distributors on summary judgment.[5] Nonetheless, the trial court correctly reasoned as follows:
 {¶ 18} "Even assuming, arguendo, that Plaintiffs' [defamation] claims survive the statute of limitations defense, remaining defendant Beverage Distributors argues that it has a qualified immunity from civil suit because the communication was made to law enforcement personnel. See Atkinson v. Stop-n-Go Foods (Montgomery Cty. 1992)[6] [sic]. InHahn v. Kotten (1975)[7] [sic], the Ohio Supreme discussed at great length qualified privilege and the public policy reasons for such a defense. As discussed, a `[c]onditional or qualified privilege is based on public policy. It does not change the actionable quality of the words published, but merely rebuts the inference of malice that is imputed in the absence of privilege, and make a showing of falsity and actual malice essential to the right of recovery.' Id. at 244, quoting 50 American Jurisprudence 2d 698, Libel and Slander, Section 195." (R. 22, Vol. 642, P. 134). Because the qualified privilege applies to the alleged defamatory information that Beverage Distributors supplied to the authorities, plaintiffs must make these additional showings.
 {¶ 19} Having reviewed the entire record, we concur with the trial court's observation that there is no evidence to indicate that Beverage Distributors, through its agent(s), acted with actual malice when they made the statements to the CPD and/or the prosecutor implicating Mr. Tourlakis in the theft ring. In the absence of this showing, the trial court did not err in granting summary judgment in favor of Beverage Distributors on plaintiffs' defamation claim.
 {¶ 20} To maintain the malicious prosecution claim, plaintiffs had to establish "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the defendant." Rogers v. Barbera (1960), 170 Ohio St. 241, paragraph one of the syllabus, applied and followed by Trussel v. GeneralMotors Corp. (1990), 53 Ohio St.3d 142, syllabus.
 {¶ 21} The settled case law observes the want of probable cause as "the real gist of the action." Melanowski v. Judy (1921), 102 Ohio St. 153, paragraph one of the syllabus. If plaintiffs establish lack of probable cause, "the legal inference may be drawn that the proceedings were actuated by malice." Id.
 {¶ 22} In Melanowski, the Ohio Supreme Court reiterated the definition of probable cause as "`[a] reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in the belief that the person accused is guilty of the offense with which he is charged.'" Id., quoting Ash v. Marlow [1851],20 Ohio 119. It further held that "in determining the want of probable cause, the defendant's conduct should be weighed in view of his situation and of the facts and circumstances which he knew or was reasonably chargeable with knowing at the time he made the criminal complaint." Id. at paragraph two of the syllabus.
 {¶ 23} While the jury typically resolves the existence of probable cause as a factual question, the trial court properly resolves the issue as a matter of law where reasonable minds could only reach one conclusion based on the evidence. Huber v. O'Neill (1981), 66 Ohio St.2d 28, 29; Guyv. McCartney, 2002 Ohio 3035, Jefferson App. No. 00JE7, citing Baryak v.Kirkland (2000), 137 Ohio App.3d 704,711.
 {¶ 24} Further, precedent dictates that an indictment creates a rebuttable presumption of probable cause; overcome only by plaintiffs' production of evidence "to the effect that the return of the indictment resulted from perjured testimony or that the Grand Jury proceedings were otherwise significantly irregular." Deoma v. City of Shaker Heights
(1990), 68 Ohio App.3d 72, citing Epling v. Express Co. (1977),55 Ohio App.2d 59, 62. However, where the prosecutor exercises his/her "uncontrolled discretion to prosecute," an individual that supplied information to that prosecutor in good faith is not the cause of the indictment. Epling, 55 Ohio App.2d at 62.
 {¶ 25} This case involves similar facts to those at issue in Epling where an investigator, working undercover, garnered information that implicated an employee in thefts from his employer culminating in the indictment of the employee for theft. Id. Like this case, the charges against the employee in Epling were ultimately dismissed and thereafter the employee pursued claims of malicious prosecution against his employer. Id.
 {¶ 26} The plaintiff in Epling urged the appellate court to reverse the directed verdict on the claim of malicious prosecution rendered by the trial court in favor of defendants. In affirming the judgment, the appellate court held that the employer had a right to rely on statements of private investigators and that "`a party is not bound to have evidence that will insure a conviction. He is not required to be absolutely convinced, but to have evidence sufficient to justify an honest belief of the guilt of the accused.'" Id, quoting Widmeyer v.Felton (Ohio Cir. 1899), 95 F. 926, 931. Consequently, the court upheld the directed verdict in Epling because the plaintiff "failed to demonstrate that the indictment was not the result of the prosecutor's uncontrolled discretion." Id.
 {¶ 27} We find that the plaintiffs did not rebut the presumption of probable cause created by the indictment with the requisite evidentiary showing. In this case, the unrefuted evidence establishes that the prosecutor acted at his own "unfettered discretion" to pursue the indictment and prosecution of Mr. Tourlakis. Further, Beverage Distributors relied on information supplied by the undercover Pinkerton agent which the law justifies as set forth previously. While the trial court denied plaintiffs' effort to secure Grand Jury testimony, the parties had engaged in and completed discovery under these same facts in the previously filed action. Presumably, the parties had the opportunity to depose witnesses as part of the discovery process. The record in this case, while limited, indicates that plaintiffs received police reports and confidential reports made by the undercover Pinkerton agent. Nonetheless, there has been no evidence presented that would contradict Beverage Distributor's position that it acted in good faith in presenting the information it received to the authorities. And, the information that is in the record is sufficient to justify an honest belief of the accused's guilt. See Epling, supra.
 {¶ 28} Based on the foregoing, we find that the plaintiffs failed to establish lack of probable cause, an essential element to their claim for malicious prosecution. Accordingly, the trial court did not err by entering summary judgment in favor of Beverage Distributors on that claim.
 {¶ 29} Finally, Mrs. Tourlakis advances a claim for loss of consortium as a derivative claim of the malicious prosecution and defamation claims. However, "a derivative cause of action for loss of consortium cannot provide greater relief than the relief permitted for the primary cause of action." Lynn v. Allied Corp. (1987),41 Ohio App.3d 392, 402, citing Messmore v. Monarch Machine Tool Co.
(1983), 11 Ohio App.3d 67. Since the primary claims warranted summary disposition, the trial court did not err in awarding summary judgment to Beverage Distributors on this claim as well. The third assignment of error is overruled.
 {¶ 30} "II. The trial court erred in denying the motion for Grand Jury testimony of plaintiff-appellant James Tourlakis, because there existed a particularized need that outweighed the need for secrecy."
 {¶ 31} We review the trial court's decision to deny plaintiffs' motion for Grand Jury testimony under an abuse of discretion standard.Wurth v. Emro Marketing Co. (1998), 125 Ohio App.3d 494. Thus, we will not disturb the trial court's decision unless we find it unreasonable, arbitrary, or unconscionable. Blakemore v. Blakemore (1983),5 Ohio St.3d 217, 219.
 {¶ 32} The trial court supervising a Grand Jury may disclose evidence presented to the Grand Jury in civil and criminal actions where justice requires. Petition for Disclosure of Evidence (1980),63 Ohio St. 212, paragraph one of the syllabus; R.C. 2939.11. However, a petitioner must demonstrate a "particularized need" that outweighs the need for maintaining the secrecy of Grand Jury proceedings. Id. The Ohio Supreme Court has set forth five factors to consider in making this determination. Id.
 {¶ 33} In assessing a petitioner's need for Grand Jury testimony in the context of malicious prosecution and defamation claims, other courts have deemed allegations that people lied to the Grand Jury insufficient to establish a particularized need for these transcripts that would outweigh the need for keeping them secret. E.g., Wurth, supra. The court in Wurth based this determination on the fact that witnesses are immune from civil liability even where "the party testifying knew his statements were false." Id. at 500.
 {¶ 34} Plaintiffs argue that the only way to overcome the presumption of probable cause created by a Grand Jury indictment is to obtain the Grand Jury transcripts. To accept this argument would result in a party being entitled to Grand Jury testimony upon the mere filing of a malicious prosecution claim. This is contrary to existing precedent which holds that a party fails to satisfy the requisite "particularized need" by offering mere speculation about the possible content of Grand Jury proceedings. State v. Mack (1995), 73 Ohio St.3d 502, 508.
 {¶ 35} In this case, plaintiffs present no evidence to suggest that any of the defendants lied or otherwise prejured themselves by relating information implicating Mr. Tourlakis in the theft ring. In fact, plaintiffs have obtained statements from the defendants stating that they had a good faith belief of his involvement. Without some evidence beyond mere speculation that would suggest perjury or some other irregularity in the Grand Jury proceedings, we cannot find that the trial court abused its discretion in denying plaintiffs' motion. The second assignment of error is overruled.
 {¶ 36} "I. The trial court erred in granting the motion to dismiss the complaint of defendant-appellee, Pinkerton Investigation Services, Inc., because the facts alleged in the complaint, with all reasonable inferences to be drawn therefrom, construed as true in favor of the plaintiffs-appellants James Tourlakis and Denise Tourlakis, state a cause of action for malicious prosecution, defamation and loss of services and consortium."
 {¶ 37} It is well settled that "[a] motion to dismiss for failure to state a claim upon which relief can be granted is procedural and tests the sufficiency of the complaint * * * Thus, the movant may not rely on allegations or evidence outside the complaint; otherwise, the motion must be treated, with reasonable notice, as a Civ.R. 56 motion for summary judgment." State ex rel. Hanson v. Guernsey County Bd. of Comm'rs. (1992), 65 Ohio St.3d 545, 548, citing, Civ.R. 12(B)[other citations omitted].[8]
 {¶ 38} The court must construe the material allegations of the complaint as true and construe all reasonable inferences in favor of the non-moving party. Id. "Then, before the court may dismiss the complaint, `* * * it must appear beyond doubt from the complaint that the plaintiff can prove no set of facts entitling him to recovery. * * *'" Id., quoting O'Brien v. University Community Tenants Union(1975),42 Ohio St.2d 242. We employ a de novo review. Cleveland Elec. Illum.Co. v. Pub. Util. Comm. (1996), 76 Ohio St.3d 521, 523.
 {¶ 39} With these standards in mind, we review plaintiffs' complaint against Pinkerton. To establish a prima facie case for malicious prosecution plaintiffs must prove "(1) malice in instituting or continuing the prosecution, (2) lack of probable cause, and (3) termination of the prosecution in favor of the defendant." Rogers v.Barbera (1960), 170 Ohio St. 241, paragraph one of the syllabus, applied and followed by Trussel v. General Motors Corp. (1990), 53 Ohio St.3d 142, syllabus.
 {¶ 40} In paragraphs 6-13 of the complaint, plaintiffs make the necessary allegations that, if true, would establish a claim of malicious prosecution. Therefore, unless this claim is time barred, as urged by Pinkerton, the trial court erred in dismissing it under Civ.R. 12(B)(6).
 {¶ 41} Pinkerton argues that plaintiffs failed to qualify for protection under Ohio savings statute, R.C. 2305.19, when it dismissed its first filed action on November 17, 1999, and did not serve Pinkerton with the complaint in the new action until October 10, 2001. We reject this argument because the date of filing the new complaint, along with obtaining service within a year, controls the determination of whether an action was commenced within the period allowed by the savings statute.Braswell v. Duncan (1997), Cuyahoga App. No. 72038 (plaintiff must obtain service on defendant within one year after the date of re-filing the complaint). Since plaintiffs refiled their complaint by November 14, 2000, and perfected service on Pinkerton within a year of that date as permitted by Civ.R. 3(A) and within the time ordered by the trial court (October 12, 2001), the savings statute applies and this claim is not time barred.
 {¶ 42} The savings statute does not apply to claims not commenced timely in the first action. See, generally, R.C. 2305.19; Shanahorn v.Sparks (2000), Franklin App. No. 99AP-1340. In this case, Pinkerton claims that the plaintiffs failed to timely file their defamation action in the first action. The record reflects that the trial court granted defendants' motion to dismiss the defamation claim on statute of limitations grounds in the first filed action. (R. 22, Vol. 642, P. 133, Footnote 2).
 {¶ 43} A claim for defamation based on slander must be commenced within one year after the cause of action accrued. R.C. 2305.11(A). A cause of action for slander accrues from the time the defamatory remarks were spoken, whether the defamed person had knowledge or not. Lyons v.Farmers Ins. Group of Cos. (1990), 67 Ohio App.3d 448, 450, 587 N.E.2d 362.
 {¶ 44} Plaintiffs argue that the potential existence of a malicious prosecution claim arising from the same facts as the slander claim should operate to toll the statutory period for filing the slander claim until the time the malicious prosecution claim accrues. We have been provided no law to that effect and decline to extend or otherwise modify the law in this regard.
 {¶ 45} Construing the complaint in the light most favorable to plaintiffs, the last date of an alleged defamatory statement is December 2, 1996. Since plaintiffs did not file their original complaint until over a year later, plaintiffs failed to timely commence this action within the statute of limitations in the first action and this claim could not be saved by the provisions of R.C. 2305.19.
 {¶ 46} Because we find that the trial court erred in granting Pinkerton's motion to dismiss the malicious prosecution claim under Civ.R. 12(B)(6), we find it was also erroneous to dismiss the derivative claim for loss of consortium upon a Civ.R. 12(B)(6) motion. The first assignment of error is sustained in part and overruled in part.
Judgment affirmed in part; reversed in part and remanded for further proceedings consistent with this opinion.
It is ordered that appellees and appellants shall each pay their respective costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
ANNE L. KILBANE, P.J., and ANN DYKE, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R. 22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. 112, Section 2(A)(1).
[1] Referred to herein as "plaintiffs" collectively and "Mr. Tourlakis" and "Mrs. Tourlakis" individually.
[2] Referred to herein as "defendants" collectively and "Beverage Distributors," "Glencer" and "Pinkerton" individually.
[3] Plaintiffs opposed, and the trial court overruled, Beverage Distributors' motion to join the dockets and complete file of the previous lawsuit to this "refiled" case. Our review is correspondingly limited to the record in this case.
[4] Plaintiffs did not serve the parties in this action with this motion, but served the county prosecutor.
[5] Under the first assigned error relating to the granting of Pinkerton's motion to dismiss, plaintiffs contend that their defamation claim should not be barred by the statute of limitations. We address that contention separately in our discussion of that assigned error.
[6] The full citation of the case referenced is Atkinson v. Stop-n-GoFoods, Inc. (1992), 83 Ohio App.3d 132.
[7] The full citation of the case referenced is Hahn v. Kotten
(1975), 83 Ohio St.2d 237.
[8] The parties do not contend that the trial court treated the motion to dismiss as a motion for summary judgment. The trial court did not provide any notice to that effect either.